**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>TUBOS REUNIDOS, S.A., TUBOS REUNIDOS GROUP S.L.U., TUBOS REUNIDOS PREMIUM THREADS, S.L.U., APLICACIONES TUBULARES, S.L.U., TUBOS REUNIDOS SERVICES, S.L.U., TUBOS REUNIDOS GMBH, TUBOS REUNIDOS AMERICA, INC., and RDT, INC.,[1]<br><br>Debtors in a Foreign Proceeding. | Chapter 15<br><br>Case No. 26-35383<br><br>(Joint Administration Requested) |

**VERIFIED PETITIONS FOR (I) RECOGNITION OF SPANISH PROCEEDINGS AS FOREIGN MAIN PROCEEDINGS, (II) RECOGNITION OF FOREIGN REPRESENTATIVE, AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

PKF Attest Concursal, S.L.P. ("PKF" or "Foreign Representative"), the duly appointed insolvency administrator and the qualified and acting foreign representative of the above-captioned debtors (collectively, the "Debtors"), which Debtors are the subject of three separate, jointly administered insolvency proceedings (the "Spanish Proceedings")[2] pending in Spain before the Civil Division of the Court of First Instance No. 7 of Vitoria-Gasteiz (the "Spanish Court"), hereby

[1] The chapter 15 debtors incorporated in Spain (collectively, the "Spanish Debtors"), along with the last four digits of each Spanish Debtor's Spanish tax identification number, are: Tubos Reunidos, S.A. ("TRSA") (1555), Tubos Reunidos Group S.L.U. ("TRG") (3694), Tubos Reunidos Premium Threads, S.L.U. ("TRPT") (0047), Aplicaciones Tubulares, S.L.U. ("ATUCA") (0715) and Tubos Reunidos Services, S.L.U. ("TRS") (6125). The chapter 15 debtor incorporated in Germany, along with the last four digits of its German tax identification number, is Tubos Reunidos GmbH ("TRGmbH" or "German Debtor") (9854). The chapter 15 debtors incorporated in the United States (collectively, the "U.S. Debtors"), along with the last four digits of each U.S. Debtor's federal tax identification number, are: Tubos Reunidos America, Inc. ("TRAME") (6565) and RDT, Inc. ("RDT") (6426). The Debtors' executive headquarters are located at No. 2, Barrio de Sagarribai, Amurrio (Álava), Spain.

[2] The Spanish Proceedings are pending in three separate, jointly administered cases: (a) Case No. 296/2026, which includes TRSA; (b) Case No. 301/2026, which includes TRG and TRPT, and (c) Case No. 302/2026, which includes ATUCA, TRS, TRGmbH, TRAME and RDT.

submits this motion together with the petitions filed simultaneously herewith (this motion and the petitions together, the "Verified Petitions"), and respectfully requests entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), recognizing the Spanish Proceedings as "foreign main proceedings" and granting certain related relief pursuant to sections 105(a), 362, 1507, 1509, 1510, 1515, 1517, 1520, and 1521 of title 11 of the United States Code (the "Bankruptcy Code").

In support of the Verified Petitions, the Foreign Representative has filed contemporaneously herewith (a) the *Declaration of Iker Filloy Nieva Pursuant to 11 U.S.C. § 1515 and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure and in Support of Verified Petitions for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Nieva Declaration"); and (b) the *Declaration of Itsaso Santos Olalde in Support of Verified Petitions for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Olalde Declaration" and, together with the Nieva Declaration, the "PKF Declarations"), each of which are incorporated herein by reference. The Foreign Representative has also filed the *Motion for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* (the "Motion for Provisional Relief") contemporaneously herewith.

In further support of the Verified Petitions, the Foreign Representative respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Debtors make up a steel manufacturing conglomerate with over 130 years of history. The parent company, TRSA, was incorporated in 1892 under the name "Tubos Forjados,

S.A." and has been listed on the Bilbao and Madrid stock exchanges for decades. Since its founding, TRSA and the other Debtors have been engaged in the manufacture and sale of seamless steel tubes. The Debtors are currently one of the leading European producers in the sector, with industrial facilities in Amurrio (Álava, Spain), Trápaga (Bizkaia, Spain), Iruña de Oca (Álava, Spain), and Beasley (Houston, Texas). The Debtors also have a commercial presence in Germany (through TRGmbH) and the United States (through TRAME and RDT).[3]

2. The Debtors commenced the Spanish Proceedings in the Spanish Court on May 4, 2026. The Spanish Court subsequently entered a series of orders declaring voluntary bankruptcy for each Debtor and appointing PKF as the insolvency administrator for each Debtor (collectively, the "Opening Orders").[4] The Opening Orders provide that the Debtors retain the powers of administration and disposal over the Debtors' assets, subject to the supervision of the Foreign Representative, which may grant or deny authorization as it deems appropriate.[5]

3. In the Spanish Proceedings, the Spanish Court conducted an entity-by-entity analysis of the Center of Main Interest (COMI) of each Debtor. In the Opening Orders, the Spanish Court determined that the COMI of each Debtor was located at the headquarters of the parent company, TRSA, in Álava, Spain, because (a) all strategic, financial, and operational decisions are coordinated from Spain, (b) the German Debtor and U.S. Debtors participate in centralized group financing and liquidity-management arrangements coordinated from Spain, (c) a significant portion of the German Debtor's and U.S. Debtors' liabilities arise from intragroup obligations, and (d) each Debtor's principal creditor relationships and business affairs are managed from Spain.[6]

---

[3] Olalde Decl. ¶ 8; Nieva Decl. ¶ 8.
[4] Certified transcripts of the Opening Orders are attached to the Verified Petitions filed concurrently herewith.
[5] Olalde Decl. ¶¶ 22, 25, 30, 33; Nieva Decl. ¶¶ 22, 25, 30, 33.
[6] Olalde Decl. ¶ 26; Nieva Decl. ¶ 26.

4. The Debtors are taking a dual track approach in the Spanish Proceedings. The Debtors continue negotiating an agreement with their creditors that would allow the Debtors to restructure and retain all of their assets. However, under the circumstances, the Debtors believe that the best way to maintain their operations is to launch a competitive sale process for the acquisition of some or all of their business units. The Debtors recently received Spanish Court approval of "Rules" (similar to Chapter 11 bid procedures) governing the potential sale of some or all of the Debtors' assets (the "Potential Sale"). The Debtor's Potential Sale process has already begun and is expected to run through September 2026.[7]

5. The Foreign Representative, with the support of the Debtors, files these Chapter 15 Cases to (a) obtain recognition of the Spanish Proceedings in the United States, (b) protect the interests of the Debtors in property located in the United States, (c) prevent creditors from commencing actions in the United States that will diminish the value of the Debtors' estates or otherwise interfere with the Spanish Proceedings or the Potential Sale, and (d) permit the Foreign Representative to seek enforcement or further relief obtained from the Spanish Court related to the Spanish Proceedings or the Potential Sale.

6. For the reasons set forth herein, the Foreign Representative submits that the relief requested in the Verified Petitions is necessary and appropriate to preserve, protect, and realize on the Debtors' assets in the Spanish Proceeding.

## JURISDICTION AND VENUE

7. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *General Order 2012-6* from the United States District Court for the Southern District of Texas, dated as of May 24, 2012.

[7] Olalde Decl. ¶¶ 28-30, 34-37; Nieva Decl. ¶ ¶¶ 28-30, 34-37.

8. These Chapter 15 Cases have been properly commenced with respect to each of the Debtors in accordance with sections 1504 and 1515 of the Bankruptcy Code by the filing of the Verified Petitions. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

9. Venue is proper in this District pursuant to 28 U.S.C. § 1410.

10. The bases for the relief requested herein are sections 105(a), 362, 1507, 1509, 1510, 1515, 1517, 1520, and 1521 of the Bankruptcy Code and Rule 9013-1 of the Local Rules of Practice and Procedure of the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules," and each individually, a "Local Rule").

## RELEVANT BACKGROUND[8]

### I. The Debtors' Operations and Corporate Structure.

11. As noted above, the Debtors are an industrial business group with more than 130 years of history, whose main activity is the manufacture and sale of seamless steel pipes. The parent company, TRSA, was incorporated in 1892, and has been listed on the Bilbao and Madrid, Spain stock exchanges for decades. The Debtors have operations in Spain, Germany, and the United States. TRSA, the parent company, directly or indirectly owns 100% of each of the other Debtors. A true and correct copy of an organizational chart for the Debtors is attached to each PKF Declaration as Exhibit 1.[9] A summary description about each Debtor is below.

12. **Tubos Reunidos, S.A. (TRSA).** TRSA is a Spanish entity with a registered office at No. 2, Barrio de Sagarribai, Amurrio (Álava), Spain. It is the parent company that directly or indirectly owns 100% of each Debtor. TRSA has had its shares listed on the Bilbao and Madrid Stock Exchanges since July 1, 2005. TRSA is managed and administered by an 8-person Board of

[8] This Background section largely draws from the pleadings filed in the Spanish Proceeding, including: the Petition for Joint Declaration of Voluntary Insolvency, the Decision of the Spanish Court instructing Debtors to file separate insolvency cases, the Opening Orders, and filings related to the Rules and Proposed Sale.
[9] Olalde Decl. ¶ 8; Nieva Decl. ¶ 8.

Directors. TRSA is the entity that provides the strategic, financial, and operational decisions for all of the Debtors and the entity primarily responsible for the Debtors' liabilities. TRSA employs 14 people, all located in Spain.[10]

13. **<u>Tubos Reunidos Group S.L.U. (TRG)</u>.** TRG is a Spanish entity with a registered office in Amurrio (Álava), Sagarribai neighborhood, s/n. It is a wholly owned subsidiary of TRSA and is TRGmbH's parent company. TRG is managed and administered by two joint directors, both of whom reside in Spain: Mr. López de las Heras and Ms. Inés Núñez de la Parte. TRG is the Debtors' manufacturer of seamless steel tubes. As of May 30, 2026, TRG had approximately 1,178 employees, all located in Spain.[11]

14. **<u>Tubos Reunidos Premium Threads, S.L.U. (TRPT)</u>.** TRPT is a Spanish entity with a registered office in Iruña de Oca (Álava), at Subillabide Industrial Park, Lot 5, Block E. It is a wholly owned subsidiary of TRSA. TRPT is managed and administered by two joint directors, both of whom reside in Spain: Mr. López de las Heras and Mr. Pipaón Palacio. TRPT is a specialized finishing and technology-focused company that is primarily responsible for premium threading and connection services for the steel pipes manufactured by other Debtors. As of May 30, 2026, TRPT had 64 employees, all located in Spain.[12]

15. **<u>Aplicaciones Tubulares, S.L.U (ATUCA)</u>.** ATUCA is a Spanish entity with a registered office in Bilbao, Spain, at Calle Máximo Aguirre, No. 18 bis. It is a wholly owned subsidiary of TRSA. ATUCA is managed and administered by two joint directors, both of whom reside in Spain: Mr. López de las Heras and Ms. Inés Núñez de la Parte. ATUCA has no employees

---

[10] Olalde Decl. ¶ 9; Nieva Decl. ¶ 9.
[11] Olalde Decl. ¶ 10; Nieva Decl. ¶ 10.
[12] Olalde Decl. ¶ 11; Nieva Decl. ¶ 11.

or operations. It is a holding company that owns 100% of the shares of RDT. ATUCA's liabilities consist primarily of intercompany debt.[13]

16. **Tubos Reunidos Services, S.L.U. (TRS).** TRS is a Spanish entity with a registered office in Spain, at No. 2, Barrio de Sagarribai, Amurrio (Álava). It is a wholly owned subsidiary of TRSA. TRS is managed and administered by two joint directors, both of whom reside in Spain: Mr. López de las Heras and Ms. Inés Núñez de la Parte. Until the end of 2023, TRS's operations consisted of (a) the design and development of engineering projects involving prefabricated pipes and fittings for pressure equipment at its facility in Chiclana de la Frontera, Spain and (b) the sale of pipes and other metallurgical fittings in project packages at its facility in Barcelona, Spain. At the end of 2023, TRS's operations ceased after it reported a negative operating result of €577,000 and a net loss of €377,000 for that fiscal year. TRS has no employees, facilities, offices, or operations other than its registered office. TRS's liabilities consist primarily of intercompany debt (other than its guaranty obligations).[14]

17. **Tubos Reunidos GmbH.** TRGmbH is a German entity with a registered office at Theodorstraße 297, 40472 Düsseldorf, Germany. It is a wholly owned subsidiary of TRG. is managed and administered by two joint directors, both of whom reside in Spain: Mr. López de las Heras and Ms. Inés Núñez de la Parte. TRGmbH provides commercial and technical support to the Debtors' clients in processing orders in the markets of Central, Northern, and Eastern Europe. It provides these services on an exclusive basis for TRG, the Debtors' manufacturer of seamless steel tubes. TRGmbH was incorporated in late 2024, with the objective of establishing a branch in Germany as part of the Debtors' strategy to strengthen the presence of their commercial and sales teams in the main target markets for the seamless steel tubes manufactured by the Debtors.

[13] Olalde Decl. ¶ 12; Nieva Decl. ¶ 12.
[14] Olalde Decl. ¶ 13; Nieva Decl. ¶ 13.

TRGmbH has four employees. TRGmbH has no facilities, offices, or operations other than its registered office, which houses the Düsseldorf office where its staff carries out its activities. TRGmbH's liabilities consist primarily of intercompany debt.[15]

18. **<u>Tubos Reunidos America, Inc. (TRAME)</u>.** TRAME is an entity organized under the laws of the State of Texas with an office located at 550 Post Oak Blvd. #430, Houston, Texas 77027 (the "<u>Houston Facility</u>"). TRAME is a wholly owned subsidiary of TRSA. Mr. López de las Heras is TRAME's chief executive officer. TRAM is managed and administered by a board of directors that includes Mr. López de las Heras, Mr. Antonio Pipaón Palacio, Mr. Ignacio Barón López, and Ms. Inés Núñez de la Parte. Mr. López de las Heras, who resides in Spain, is TRAME's chief executive officer. TRAME provides advisory and oversight services related to the Tubos Reunidos group's operations related to the United States. TRAME's sole facility is a leased office located at the Houston Facility. TRAME currently has two employees.[16]

19. **<u>RDT, Inc. (RDT)</u>.** RDT is organized under the laws of the State of Texas with an office located at 9022 Vincik Ehlert Road, Beasley, Texas 77417 (the "<u>Beasley Facility</u>"). RDT is a wholly owned subsidiary of ATUCA. RDT is managed and administered by a board of directors that includes Mr. López de las Heras, Mr. Antonio Pipaón Palacio, Mr. Ignacio Barón López, and Ms. Inés Núñez de la Parte. Mr. López de las Heras, who resides in Spain, is RDT's chief executive officer. RDT is engaged in the processing, threading, and finishing of seamless steel pipes for the oil and gas industry in the North American market. RDT is an importer of a portion of the material shipped by the Debtors to the United States. It holds an import license with customs. RDT owns an industrial facility (*i.e.*, the Beasley Facility). As of May 30, 2026, RDT had six employees.[17]

---

[15] Olalde Decl. ¶ 14; Nieva Decl. ¶ 14.
[16] Olalde Decl. ¶ 15; Nieva Decl. ¶ 15.
[17] Olalde Decl. ¶ 16; Nieva Decl. ¶ 16.

## II. <u>The Debtors' Joint Financing Obligations and Intercompany Obligations</u>.

20. The Debtors' financing structure is organized around four main instruments (the collectively, the "Joint Financing Obligations"), under which some or all of the Debtors are jointly and severally liable to primarily Spanish lenders or government entities. The first is a long-term syndicated financing agreement, with a syndicate of primarily Spanish lenders, including Banco Santander, S.A., Kutxabank, S.A., Banco de Sabadell, S.A., and others. The long-term financing agreement is divided into three tranches: Tranche A, in the original amount of €104,365,998.00; Tranche B, in the original amount of €124, 424,124.45; and Tranche C, in the original amount of €37,004,238.89. The syndicated financing agreement was entered into by TRSA, as borrower, and TRG, ATUCA, TRS, TRAME and RDT, as guarantors.[18]

21. The second consists of A bonds and B bonds. The A bonds are unsecured bonds with a total amount of €5,634,002 and a face value of €181,742. The B bonds are convertible bonds with a principal amount of €10,633,217 and a face value of €343,007. TRSA serves as the issuer of both series. The bonds are backed by personal guarantees provided by ATUCA, TRS, TRAME and RDT.[19]

22. The third consists of working capital lines of credit, including confirming and factoring instruments, with a group of primarily Spanish lenders, including Banco Bilbao Vizcaya Argentaria, S.A., Banco de Sabadell, S.A., Banco Santander, S.A., and others. The working capital agreements were executed by TRSA, ATUCA, TRS, TRAME and RDT as borrowers, all of which also simultaneously serve as personal guarantors of the obligations of the other borrowers.[20]

---

[18] Olalde Decl. ¶ 17; Nieva Decl. ¶ 17.
[19] Olalde Decl. ¶ 18; Nieva Decl. ¶ 18.
[20] Olalde Decl. ¶ 19; Nieva Decl. ¶ 19.

23. The fourth is a financing agreement, dated July 22, 2021, whereby the Strategic Companies Solvency Support Fund, a fund created by the Spanish government to mitigate the effects of COVID on the activity of companies that are strategic for the Spanish economy, granted TRSA financing in the amount of €112,800,000. This agreement includes personal guarantees provided by TRAME, TRS, ATUCA, and RDT.[21]

24. In addition to these Financing Obligations, The Debtors are also parties to intercompany lending, commission and administrative agreements between themselves, including several involving TRAME and TRGmbH (collectively, the "Intercompany Obligations"). Both TRAME and TRGmbH have received intercompany loans from TRAME. TRAME earns commission income and recognizes a corresponding commissions receivable from TRG. TRAME owes administrative expense fees to its affiliates, including TRSA and TRG. Through these intercompany arrangements, TRAME owes Intercompany Obligations to other Debtors.[22]

## III. The Debtors' Spanish Insolvency Proceedings.

25. On May 4, 2026, the Debtors filed a joint petition in the Spanish Court to commence the Spanish Proceedings. The Debtors filed the Spanish Proceedings as the result of a combination of multiple adverse factors that progressively eroded the Debtors' ability to generate the cash flows necessary to service their financial debt. In particular, the loss of access to the U.S. markets (which historically has accounted for approximately 50% of the Debtors' revenue) as a result of U.S. tariff's on steel imports, combined with weak demand in European markets, and the heavy fixed-cost structure characteristic of the steel industry led the Debtors to incur significant losses in 2025, thereby deteriorating its financial position and liquidity.[23]

---

[21] Olalde Decl. ¶ 20; Nieva Decl. ¶ 20.
[22] Olalde Decl. ¶ 21; Nieva Decl. ¶ 21.
[23] Olalde Decl. ¶ 22; Nieva Decl. ¶ 22.

26. Because TRSA is publicly traded, Spanish law requires certain notifications and decisions be made by the Spanish National Securities Market Commission, which is not required for the other Debtors. Thus, on May 6, 2026, the Spanish Court entered an order (a) requiring the Debtors to notify the National Securities Market Commission in Spain of the TRSA insolvency proceedings and satisfy other requirements prior to appointment of an insolvency administrator for TRSA, and (b) requiring the Debtors to organize the joint petition into three separate cases to address this and other issues.[24]

27. On May 7, 2026, the Debtors filed new case number 301/2026 for Debtors TRG and TRPT, and new case number 302/2026 for Debtors ATUCA, TRS, TRGmbH, TRAME, and RDT (the "New Cases"). TRSA's proceedings continue under original case number 296/2026 (the "Original Case").[25]

28. On May 11, 2026, the Spanish Court issued Opening Orders for the Debtors in the New Cases, jointly declaring those Debtors voluntarily bankrupt and appointing PKF as the insolvency administrator for the Debtors in the New Cases.[26]

29. In the Opening Orders in the New Cases, the Spanish Court conducted a COMI analysis for each Debtor and determined that the COMI for each Debtor—including the German Debtor and U.S. Debtors—was Spain. In the Opening Order entered in New Case 302/2026, the Spanish Court held:

> The center of main interests shall be the place where the debtor conducts the administration of its interests on a regular basis and which is ascertainable by third parties. . . .
>
> In this case, although [TRS] has its registered office in Amurrio (Álava), [ATUCA] in Bilbao, [TRGmbH] in Düsseldorf (Germany), [TRAME] in Houson, and [RDT] in Beasley (both in Texas, United States of America), it is justified in the insolvency

[24] Olalde Decl. ¶ 23; Nieva Decl. ¶ 23.
[25] Olalde Decl. ¶ 24; Nieva Decl. ¶ 24.
[26] Olalde Decl. ¶ 25; Nieva Decl. ¶ 25.

> application that the center of main interests of all of them is located at the headquarters of the parent company of the [TRSA] group in Álava.
>
> The management bodies are composed of individuals who are located in and make decisions from Spain. Strategic, financial, and operational decisions are made in Spain, at the Amurrio and Bilbao headquarters. The German and U.S. companies [participate in a . . .] financing structure [] arranged with the parent company as the primary lender, which is responsible for managing and fulfilling all obligations to financial creditors; virtually all of these companies' liabilities consist of intragroup debts, and third-party creditors with exclusive ties to the countries where the subsidiaries are formally domiciled are either nonexistent or irrelevant.[27]

30. On June 10, 2026, the Debtors, on behalf of all Debtors, paid a retainer to undersigned counsel, which is being held in a United States bank account, to prepare these Chapter 15 Cases.[28]

31. On June 11, 2026, in the New Cases, the Foreign Representative filed a request for approval of "Rules" related to the Potential Sale of its assets and business units (the "Potential Sale Rules"). The Potential Sale Rules establish the method and conditions governing the Potential Sale process, ensuring at all times transparency, equal treatment of bidders, and the best protection of the interests of all parties.[29]

32. On June 15, 2026, the Spanish Court approved the Potential Sale Rules in the New Cases.[30]

33. On June 17, 2026, the Spanish Court entered an Opening Order for TRSA in the Original Case.[31]

34. The Foreign Representative and Debtors file these Chapter 15 Cases to seek recognition of the Spanish Proceedings in the United States, preserve the Debtors' assets, and

[27] Olalde Decl. ¶ 26; Nieva Decl. ¶ 26.
[28] Olalde Decl. ¶ 27; Nieva Decl. ¶ 27.
[29] Olalde Decl. ¶ 28; Nieva Decl. ¶ 28.
[30] Olalde Decl. ¶ 29; Nieva Decl. ¶ 29.
[31] Olalde Decl. ¶ 30; Nieva Decl. ¶ 30.

ensure the Debtors' restructuring and sale efforts in Spain are recognized in the United States.[32] Accordingly, the Debtors request this Court recognize the Spanish Proceedings as foreign main proceedings.

## RELIEF REQUESTED

35. The Foreign Representative requests that this Court enter an order, substantially in the form attached hereto as **Exhibit A**, and pursuant to sections 105(a), 362, 1507, 1509, 1510, 1515, 1517, 1520, and 1521 of the Bankruptcy Code, that provides, among other things, the following relief (collectively, the "Requested Relief"):

a. granting the Verified Petitions and recognizing the Spanish Proceedings as foreign main proceedings, or in the alternative foreign nonmain proceedings (as defined in sections 1502(4) and 1502(5) of the Bankruptcy Code, respectively) pursuant to section 1517 of the Bankruptcy Code;

b. recognizing the Foreign Representative as a "foreign representative" as defined in section 101(24) of the Bankruptcy Code;

c. enforcing and giving full force and effect in the United States to the Spanish Proceedings;

d. granting the Foreign Representative all rights afforded by section 1509 of the Bankruptcy Code, including, but not limited to the (i) Foreign Representative's capacity to sue in a court in the United States, (ii) Foreign Representative's right to apply directly to a court in the United States for appropriate relief in such court, and (iii) requirement that a court in the United States shall grant comity or cooperation to the Foreign Representative;

e. granting the Foreign Representative all of the relief afforded pursuant to section 1520 of the Bankruptcy Code, including but not limited to the "automatic stay" under section 362 of the Bankruptcy Code, and the application of section 363 pertaining to transfers of an interest of any of the Debtors' in property—all of which shall apply with respect to the Debtors and their property that is now or in the future located within the territorial jurisdiction of the United States;

[32] Olalde Decl. ¶ 31; Nieva Decl. ¶ 31.

f. staying the commencement or continuation of actions concerning the Debtors' assets (including without limitation the exercise of any right of setoff, recoupment, deduction, or netting against any accounts), staying execution of the Debtors' assets, suspending any right to transfer, encumber or otherwise dispose of any of the Debtors' assets, and providing for the examination of witnesses or taking evidence concerning the Debtors' assets, affairs, rights, obligations or liabilities, consistent with section 1521 of the Bankruptcy Code;

g. providing that the Foreign Representative may intervene in any proceedings in State or Federal court in the United States in which any of the Debtors may be a party;

h. granting, pursuant to section 1521 of the Bankruptcy Code (or section 1507 as the Court deems necessary) on a final basis any provisional relief requested in the Motion for Provisional Relief;

i. pursuant to section 1521(a)(7) of the Bankruptcy Code, providing that section 108 of the Bankruptcy Code is made applicable to the Debtors in these Chapter 15 Cases; and

j. providing such other relief under section 1507 or any other relief as the Court deems just and proper.

**BASIS FOR RELIEF**

36. Chapter 15 of the Bankruptcy Code is designed to protect and maximize the value of a debtor's assets and avoid disruptions that could otherwise derail a debtor's insolvency process in its home country. Consistent with these principles, the Foreign Representative seeks the protection of this Court afforded to foreign debtors under chapter 15 of the Bankruptcy Code to recognize the legal effect of the Spanish Proceedings and ensure the effectiveness of the Opening Orders and the protections and powers contained therein in the United States. The Foreign Representative has concluded that such relief is necessary to fulfill its mandate of preserving, protecting, and realizing on the property of the Debtors. *See* 11 U.S.C. § 1501.

37. To be eligible for chapter 15 relief, debtors must meet the general eligibility requirements under section 109(a) of the Bankruptcy Code, as well as the more specific eligibility

requirements under section 1517(a) of the Bankruptcy Code. In addition, the petition for recognition must meet the requirements of section 1515 of the Bankruptcy Code and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

38. If these elements are satisfied, the Bankruptcy Court must grant recognition. *See In re Siu-Fung Ceramics Holdings Ltd.,* 2026 WL 382424, at *10 (Bankr. S.D. Tex. Feb 10, 2026) ("The word 'shall' in section 1517(a) makes recognition mandatory in instances where the requirements of section 1517 have been satisfied and there is no public policy basis under section 1506 to deny it."); *In re Black Gold S.A.R.L.*, 635 B.R. 517, 527 (B.A.P. 9th Cir. 2022) ("Congress' use of the word "shall" in § 1517(a) removed the court's discretion in determining recognition if the requirements in the three subparagraphs of § 1517(a) have been satisfied.").

## I. The Debtors Satisfy the Requirements of Section 109(a).

39. Section 109(a) of the Bankruptcy Code provides that "only a person that resides or has a domicile, a place of business, or property in the United States…may be a debtor under this title." 11 U.S.C. § 109(a). Courts have applied section 109(a) to chapter 15 eligibility. *See Drawbridge Special Opp. Fund LP v. Barnett (In re Barnett)*, 737 F.3d 238 (2d Cir. 2013) (holding that section 109(a) of the Bankruptcy Code applies to chapter 15 debtors); *In re Siu-Fung Ceramics Holdings Ltd.*, 2026 WL 382424, at **14-19 (same); *In re Yukos Oil Co.*, 321 B.R. 396, 407 (Bankr. S.D. Tex. 2005) (same).

40. Though section 109(a) "requires a debtor to have property in the United States; 'it says nothing about the amount of such property nor does it direct that there by any inquiry into the circumstances surrounding the debtor's acquisition of the property.'" *In re Siu-Fung Ceramics Holdings Ltd.*, 2026 WL 382424, at *19 (*citing In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 373 (Bankr. S.D.N.Y. 2014)). Decisions applying section 109(a) routinely hold that a debtor satisfies

section 109(a) even when it only has a nominal amount of property in the United States. *See Yukos Oil Co.*, 321 B.R. at 407 (stating that courts routinely hold that nominal amounts of property located in the United States enable foreign corporations to qualify as debtors under Section 109(a) of the Bankruptcy code); *GMAM Inv. Funds Tr. I v. Globo Comunicacoes e Partipacoes S.A. (In re Globo Comunicacoes e Partipacoes S.A.)*, 317 B.R. 235, 249 (S.D.N.Y. 2004) (stating that courts have repeatedly found that there is "virtually no formal barrier" to having federal courts adjudicate foreign debtors' bankruptcy proceedings) (citing *In re Aerovias Nacionales de Colombia S.A. (In re Avianca)*, 303 B.R. 1, 9 (Bankr. S.D.N.Y. 2003)).

41. This Court and others routinely find "section 109(a) satisfied where, pre-petition for recognition, a retainer is paid to counsel on behalf of the debtor and held in a United States bank account." *In re Siu-Fung Ceramics Holdings Ltd.*, 2026 WL 382424, at *19 (*citing In re Octaviar Admin. Pty Ltd.*, 511 B.R. at 373). A retainer paid by a debtor to its bankruptcy counsel constitutes property of a debtor's estate. *See In re Prudhomme*, 43 F.3d 1000, 1003–04 (5th Cir. 1995). Because a debtor has an interest in the escrowed funds paid to counsel, such funds satisfy section 109(a). *See In re Global Ocean Carriers Ltd.*, 251 B.R. 31, 39 (Bankr. D. Del. 2000). "It is not relevant who paid the retainer, so long as the retainer is meant to cover the fees of the attorneys for all the Debtors[.]" *Id.* (citing *Miller v. United States Trustee (In re Independent Eng'g Co.)*, 232 B.R. 529, 533 (1st Cir. BAP 1999)).

42. Each of the Debtors is eligible to be a debtor under section 109(a) of the Bankruptcy Code because the Debtors, on behalf of all Debtors, paid a retainer to undersigned counsel before the Verified Petition was filed.[33] Additionally, every Debtor has U.S. property because (i) the Debtors own or operates U.S. assets (namely, the Beasley Facility and the Houston Facility);[34] (ii)

---

[33] Olalde Decl. ¶ 27; Nieva Decl. ¶ 27.
[34] Olalde Decl. ¶¶ 15-16; Nieva Decl. ¶¶ 15-16.

ownership of and rights in those assets are held directly or indirectly by all Debtors through a vertically and horizontally integrated structure;[35] (iii) all Debtors possess receivables, guaranty and joint and several liability claims, and contract rights with and against each other tied to U.S. counterparties and operations;[36] and (iv) the Debtors' centralized cash flows and intercompany entitlements, including the Joint Financing Obligations and Intercompany Obligations, give each Debtor claims against the U.S. Debtors and a cognizable property interest in U.S.-located value streams.[37] Further:

a. TRSA directly owns TRAME and ATUCA (which owns RDT), so it holds equity, control rights, and upstream cash rights tied to assets within the United States;[38]

b. TRG is a core operating entity that manufactures seamless steel tubing that is subsequently distributed to customers in the United States. Under the Joint Financing Obligations and as a co-guarantor, it also holds contribution and reimbursement rights against the U.S. Debtors;[39]

c. TRPT is another core operating entity that threads the steel tubing that is subsequently distributed to customers in the United States;[40]

d. ATUCA is the direct owner of RDT, which owns the Beasley Facility located in Texas, and under the Joint Financing Obligations and as a co-guarantor, it also holds contribution and reimbursement rights against the U.S. Debtors;[41]

e. TRS has property rights within the United States resulting from its participation in the Debtors' receivables and cash structure, and under the Joint Financing Obligations and as a co-guarantor, it also holds contribution and reimbursement rights against the U.S. Debtors;[42]

---

[35] Olalde Decl. ¶¶ 8-16, 26; Nieva Decl. ¶¶ 8-16, 26.
[36] Olalde Decl. ¶¶ 17-21; Nieva Decl. ¶¶ 17-21.
[37] Olalde Decl. ¶¶ 17-21; Nieva Decl. ¶¶ 17-21.
[38] Olalde Decl. ¶¶ 9, 12, 15, 16; Nieva Decl. ¶¶ 9, 12, 15, 16.
[39] Olalde Decl. ¶¶ 10, 17-21; Nieva Decl. ¶¶ 10, 17-21.
[40] Olalde Decl. ¶ 11; Nieva Decl. ¶ 11.
[41] Olalde Decl. ¶¶ 12, 17-21; Nieva Decl. ¶¶ 12, 17-21.
[42] Olalde Decl. ¶¶ 13, 17-21; Nieva Decl. ¶¶ 13, 17-21.

f. TRGmbH is a commercial extension of TRG and is dependent on group sales that includes cash flows originating from the United States, and it holds intercompany receivables tied to the United States revenue chain;[43]

g. TRAME is a Texas entity that owns property located at the Houston Facility, and TRAME has assets and one or more bank accounts with U.S. banks;[44] and

h. RDT is a Texas entity and owns the Beasley Facility, has other property located at the Beasley Facility and has one or more bank accounts with U.S. banks.[45]

43. For these reasons, the Debtors satisfy the requirements under section 109(a) of the Bankruptcy Code.

## II. <u>The Debtors Satisfy the Requirements of Section 1517(a) and Court Should Recognize the Spanish Proceedings as Foreign Main Proceedings For All of the Debtors</u>.

44. Section 1517(a) of the Bankruptcy Code provides that, after notice and a hearing, "an order recognizing a foreign proceeding shall be entered if…(1) such foreign proceeding for which recognition is sought is a foreign main proceeding…within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515." *See* 11 U.S.C. § 1517(a). The Spanish Proceedings satisfy all such requirements.

### A. <u>The Spanish Proceedings Are Foreign Proceedings</u>.

45. The Spanish Proceedings are foreign proceedings as defined under section 101(23) of the Bankruptcy Code. Section 101(23) requires that a "foreign proceeding" be (i) a collective judicial or administrative proceeding relating to insolvency or adjustment of debt; (ii) pending in a foreign country; and (iii) under the supervision of a foreign court, for the purpose of reorganizing or liquidating the assets and affairs of the debtor. *See* 11 U.S.C. § 101(23). The statute defines

[43] Olalde Decl. ¶ 14; Nieva Decl. ¶ 14.
[44] Olalde Decl. ¶ 15; Nieva Decl. ¶ 15.
[45] Olalde Decl. ¶ 16; Nieva Decl. ¶ 16.

"foreign court" as "a judicial or other authority competent to control or supervise a foreign proceeding." 11 U.S.C. § 1502(3).

46. Courts have held that a "foreign proceeding" is:

a. a proceeding;

b. that has either a judicial or an administrative character;

c. that is collective in nature, in the sense that the proceeding considers the rights and obligations of all creditors;

d. that is located in a foreign country;

e. that is authorized or conducted under a law related to insolvency or the adjustment of debts, even if the debtor that has commenced such proceedings is not actually insolvent;

f. in which the debtor's assets and affairs are subject to the control or supervision of a foreign court or other authority competent to control or supervise a foreign proceeding; and

g. which proceeding is for the purpose of reorganization or liquidation.

*See In re Siu-Fung Ceramics Holdings Ltd.*, 2026 WL 382424, at *20; *In re ABC Learning Ctrs. Ltd.*, 728 F.3d 301, 308 (3d Cir. 2013).

47. Courts routinely recognize Spanish insolvency proceedings as "foreign proceedings." *See, e.g., In re Abengoa, S.A.*, Case No. 16-10754 (LSS), (Bankr. D. Del. April 27, 2016) (Docket No. 71); *In re Isofoton, S.A.*, Case No. 13-33826 (MAW) (Bankr. N.D. Ohio Oct. 23, 2013) (Docket No. 23); *In re Quail Travel Group, S.A.*, Case No. 13-21971 (RAM) (Bankr. S.D. Fla. June 24, 2013) (Docket No. 34); *In re Oversight & Control Comm'n of Avanzit, S.A.*, Case No. 07-13765 (SMB) (Bankr. S.D. N.Y. Apr. 21, 2008) (Docket No. 55).

48. The Spanish Proceedings satisfy each of the foregoing requirements. The Spanish Proceedings remain active and are the principal forum for the Debtors' restructuring. They are collective judicial proceedings relating to insolvency and adjustment of debt. The Spanish

Proceedings are pending in Spain, under applicable Spanish and European Union insolvency laws, under the supervision of the Spanish Court, and are intended to reorganize or liquidate the Debtors' assets and affairs through a coordinated, court-supervised process in Spain.[46] The Court should, therefore, determine that the Spanish Proceedings qualify as "foreign proceedings" for purposes of section 101(23) of the Bankruptcy Code.

### B. The Spanish Proceedings Are "Foreign Main Proceedings" Under Section 1502 of the Bankruptcy Code Because Each Debtor's Center of Main Interest is in Spain.

49. Under section 1502 of the Bankruptcy Code, the term "foreign main proceeding" means "a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4). A debtor's COMI is determined as of the date the chapter 15 petition is filed, not when the foreign proceedings were initiated. *In re Siu-Fung Ceramics Holdings Ltd.*, 2026 WL 382424, at *12. Section 1516 of the Bankruptcy Code establishes a rebuttable presumption that the debtor's registered office is the debtor's COMI. *See* 11 U.S.C. § 1516(c). The presumption "is rebuttable in the presence of evidence to the contrary." *In re Siu-Fung Ceramics Holdings Ltd.*, 2026 WL 382424, at *10.

50. Factors a court considers when determining whether the COMI presumption has been overcome include: "the location of the debtor's headquarters, the location of those who actually manage or control the debtor (which conceivably could be the headquarters of a holding company); the location of the debtor's primary assets; the location of a majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes." *Id.* at **10-11; *see also In re Metrofinanciera*, No. 10-20666, 2010 Bankr. LEXIS 6450, at *4–5 (Bankr. S.D. Tex. Sept. 24, 2010) (finding the debtor's

[46] Olalde Decl. ¶¶ 22-32; Nieva Decl. ¶¶ 22-32.

center of main interests was in Mexico because its administrative offices and operations were in Mexico); *In re Gandi Innovations Holdings, LLC*, Case No. 09-51782, 2009 Bankr. LEXIS 2751 (Bankr. W.D. Tex. June 5, 2009) (holding center of main interest for Canadian parent company and U.S. subsidiaries was in Canada). When considering a debtor's COMI, courts may consider the analogous concept of an entity's "principal place of business" or "nerve center." *See Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 132 n.10 (2d Cir. 2013).

51. The Spanish Court in the Spanish Proceeding conducted a COMI analysis of each Debtor. With respect to the German Debtor and U.S. Debtors, the Spanish Court found that their center of main interests is located in Spain because the key strategic, financial, and operational decisions affecting those entities are directed and coordinated from Spain, their management functions are conducted primarily by individuals located in Spain, their principal financing arrangements are administered through the broader Tubos Reunidos group from Spain, and the creditors most significantly affected by the restructuring are principally associated with the group's Spanish-centered financing structure. The Spanish Court further found that third parties would reasonably ascertain Spain as the jurisdiction from which the affairs of those entities are administered and supervised.[47]

52. An analysis of each Debtor supports the Spanish Court's conclusion:

***Spanish Debtors***

a. **Tubos Reunidos, S.A. (TRSA).** TRSA is a Spanish entity with a registered office at No. 2, Barrio de Sagarribai, Amurrio (Álava), Spain. It is the parent company that directly or indirectly owns 100% of each Debtor. TRSA has had its shares listed on the Bilbao and Madrid Stock Exchanges since July 1, 2005. TRSA is managed and administered by an 8-person Board of Directors. TRSA is the entity that provides the strategic, financial, and operational decisions for all of the Debtors and

[47] Olalde Decl. ¶ 26; Nieva Decl. ¶ 26.

the entity primarily responsible for the Debtors' liabilities. TRSA employs 14 people, all located in Spain.[48]

b. **<u>Tubos Reunidos Group S.L.U. (TRG)</u>.** TRG is a Spanish entity with a registered office in Amurrio (Álava), Sagarribai neighborhood, s/n. It is a wholly owned subsidiary of TRSA and is TRGmbH's parent company. TRG is managed and administered by two joint directors, both of whom reside in Spain: Mr. López de las Heras and Ms. Inés Núñez de la Parte. TRG is the Debtors' manufacturer of seamless steel tubes. As of May 30, 2026, TRG had approximately 1,178 employees, all located in Spain.[49]

c. **<u>Tubos Reunidos Premium Threads, S.L.U. (TRPT)</u>.** TRPT is a Spanish entity with a registered office in Iruña de Oca (Álava), at Subillabide Industrial Park, Lot 5, Block E. It is a wholly owned subsidiary of TRSA. TRPT is managed and administered by two joint directors, both of whom reside in Spain: Mr. López de las Heras and Mr. Pipaón Palacio. TRPT is a specialized finishing and technology-focused company that is primarily responsible for premium threading and connection services for the steel pipes manufactured by other Debtors. As of May 30, 2026, TRPT had 64 employees, all located in Spain.[50]

d. **<u>Aplicaciones Tubulares, S.L.U (ATUCA)</u>.** ATUCA is a Spanish entity with a registered office in Bilbao, Spain, at Calle Máximo Aguirre, No. 18 bis. It is a wholly owned subsidiary of TRSA. ATUCA is managed and administered by two joint directors, both of whom reside in Spain: Mr. López de las Heras and Ms. Inés Núñez de la Parte. ATUCA has no employees or operations. It is a holding company that owns 100% of the shares of RDT.[51]

e. **<u>Tubos Reunidos Services, S.L.U. (TRS)</u>.** TRS is a Spanish entity with a registered office in Spain, at No. 2, Barrio de Sagarribai, Amurrio (Álava). It is a wholly owned subsidiary of TRSA. TRS is managed and administered by two joint directors, both of whom reside in Spain: Mr. López de las Heras and Ms. Inés Núñez de la Parte. Until the end of 2023, TRS's operations consisted of (a) the design and development of engineering projects involving prefabricated pipes and fittings for pressure equipment at its facility in Chiclana de la Frontera, Spain and (b) the sale of pipes and other metallurgical fittings in project packages at its facility in Barcelona, Spain. At the end of 2023, TRS's operations ceased after it reported a negative operating result of €577,000 and a net loss of €377,000 for that fiscal year. TRS has no employees, facilities, offices, or operations other than its registered office.[52]

---

[48] Olalde Decl. ¶ 9; Nieva Decl. ¶ 9.
[49] Olalde Decl. ¶ 10; Nieva Decl. ¶ 10.
[50] Olalde Decl. ¶ 11; Nieva Decl. ¶ 11.
[51] Olalde Decl. ¶ 12; Nieva Decl. ¶ 12.
[52] Olalde Decl. ¶ 13; Nieva Decl. ¶ 13.

***German Debtor and U.S. Debtors***

f. **<u>Tubos Reunidos GmbH</u>.** TRGmbH is a German entity with a registered office at Theodorstraße 297, 40472 Düsseldorf, Germany. It is a wholly owned subsidiary of TRG. is managed and administered by two joint directors, both of whom reside in Spain: Mr. López de las Heras and Ms. Inés Núñez de la Parte. TRGmbH provides commercial and technical support to the Debtors' clients in processing orders in the markets of Central, Northern, and Eastern Europe. It provides these services on an exclusive basis for TRG, the Debtors' manufacturer of seamless steel tubes. TRGmbH was incorporated in late 2024, with the objective of establishing a branch in Germany as part of the Debtors' strategy to strengthen the presence of their commercial and sales teams in the main target markets for the seamless steel tubes manufactured by the Debtors. TRGmbH has four employees. TRGbmH has no facilities, offices, or operations other than its registered office, which houses the Düsseldorf office where its staff carries out its activities. TRGmbH's liabilities consist primarily of the Joint Financing Obligations owed to primarily Spanish lenders and the Intercompany Obligations. It has few of its own obligations.[53]

g. **<u>Tubos Reunidos America, Inc. (TRAME)</u>.** TRAME is an entity organized under the laws of the State of Texas with an office located at 550 Post Oak Blvd. #430, Houston, Texas 77027 (the "<u>Houston Facility</u>"). TRAME is a wholly owned subsidiary of TRSA. Mr. López de las Heras is TRAME's chief executive officer. TRAM is managed and administered by a board of directors that includes Mr. López de las Heras, Mr. Antonio Pipaón Palacio, Mr. Ignacio Barón López, and Ms. Inés Núñez de la Parte. Mr. López de las Heras, who resides in Spain, is TRAME's chief executive officer. TRAME provides advisory and oversight services related to the Tubos Reunidos group's operations related to the United States. TRAME's sole facility is a leased office located at the Houston Facility. TRAME currently has two employees. TRAME's liabilities consist primarily of the Joint Financing Obligations owed to primarily Spanish lenders and the Intercompany Obligations owed to Spanish affiliates. It has few of its own obligations.[54]

h. **<u>RDT, Inc. (RDT)</u>.** RDT is organized under the laws of the State of Texas with an office located at 9022 Vincik Ehlert Road, Beasley, Texas 77417 (the "<u>Beasley Facility</u>"). RDT is a wholly owned subsidiary of ATUCA. RDT is managed and administered by a board of directors that includes Mr. López de las Heras, Mr. Antonio Pipaón Palacio, Mr. Ignacio Barón López, and Ms. Inés Núñez de la Parte. Mr. López de las Heras, who resides in Spain, is RDT's chief executive officer. RDT is engaged in the processing, threading, and finishing of seamless steel pipes for the oil and gas industry in the North American market. RDT is an importer of a portion of the material shipped by the Debtors to the United States. It holds an import license with customs. RDT owns an industrial facility (*i.e.*, the Beasley Facility). As of May 30, 2026, RDT had six employees. RDT's liabilities consist

[53] Olalde Decl. ¶¶ 14, 17-21; Nieva Decl. ¶¶ 14, 17-21.
[54] Olalde Decl. ¶¶ 15, 17-21; Nieva Decl. ¶¶ 15, 17-21.

primarily of the Joint Financing Obligations owed to primarily Spanish lenders and the Intercompany Obligations. It has few of its own obligations.[55]

53. In sum, with respect to the non-Spanish Debtors, the German Debtor and U.S. Debtors are exclusively managed from Spain. Each entity has limited local footprints and very few employees (TRGmbH has four, TRAME has two, RDT has six). Mr. López de las Heras, who resides in Spain, is both U.S. Debtors' chief executive officer. The German Debtor and U.S. Debtors are each managed by a board comprised of individuals who reside almost exclusively in Spain. The German Debtor and U.S. Debtors are each funded by cash flows originating directly or indirectly from TRSA and TRG, which are both located in Spain. The borrower (TRSA) under the financing instruments that the German Debtor and U.S. Debtors have guaranteed is a Spanish affiliate. The joint and several liabilities the German Debtor and U.S. Debtor's owe under the Joint Financing Obligations are owed to primarily Spanish lenders. The German Debtor and U.S. Debtors have few, if any, non-Debtor creditors. The majority of their liabilities consist of the Joint Financing Obligations owed to Spanish lenders and Intercompany Obligations owed to affiliated Spanish Debtors.[56]

54. The German Debtor and U.S. Debtors' strategic direction, financing arrangements, creditor interface, and corporate governance all emanate from Spain. Their limited footprints in Germany and the U.S., respectively—consisting of a small office, a processing facility, and a handful of employees—reflect execution-level functions rather than administration of interests. As the Spanish Court concluded, the German Debtor and U.S. Debtors participate in financing arrangements that are coordinated through the Tubos Reunidos group from Spain. Their COMI,

[55] Olalde Decl. ¶¶ 16-21; Nieva Decl. ¶¶ 16-21.
[56] Olalde Decl. ¶¶ 14-21; Nieva Decl. ¶¶ 14-21.

and the COMI of the Spanish Debtors, is properly located in Spain.[57] Thus, the Spanish Proceedings should be designated as Foreign Main Proceedings.

**C. <u>These Chapter 15 Cases Have Been Commenced by a Duly Authorized Foreign Representative</u>.**

55. The Foreign Representative is duly authorized to act as foreign representative in these Chapter 15 Cases because it is a foreign person or body petitioning for recognition, as required by section 1517(a) of the Bankruptcy Code. Further, the term "foreign representative" is defined under section 101(24) of the Bankruptcy Code as a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding. 11 U.S.C. § 101(24).

56. Here, pursuant to the Opening Orders, PKF was appointed as the insolvency administrator for each of the Debtors.[58] Accordingly, the Foreign Representative is a proper "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code. *See also* 11 U.S.C. § 1516(a) ("If the decision [commencing the foreign proceeding]…indicates…that the person or body is a foreign representative, the court is entitled to so presume.").

**D. <u>The Verified Petitions for Recognition Meet the Requirements of Section 1515 of the Bankruptcy Code and Bankruptcy Rule 1007(a)(4)</u>.**

57. These Chapter 15 Cases were duly and properly commenced by filing the Verified Petitions, accompanied by all fees, documents, and information required by the Bankruptcy and the Bankruptcy Rules, including: (a) a corporate ownership statement containing the information described in Bankruptcy Rule 7007.1; (b) a list containing (i) the names and addresses of all persons or bodies authorized to administer foreign proceedings of the Debtors, (ii) all parties to

---

[57] Olalde Decl. ¶ 26; Nieva Decl. ¶¶ 26.

[58] Olalde Decl. ¶¶ 25-30; Nieva Decl. ¶¶ 25-30.

litigation pending in the United States in which the Debtors are a party at the time of the filing of the Verified Petitions, and (iii) all entities against whom provisional relief is being sought under section 1519 of the Bankruptcy Code; (c) a statement identifying all foreign proceedings with respect to the Debtors that are known to the Foreign Representative; and (d) a certified copy of the Opening Orders. In addition, the Declarations filed contemporaneously herewith constitutes further evidence of the existence of the Spanish Proceedings and the appointment of PKF as the foreign representative as set forth in section 1515(b)(3) of the Bankruptcy Code.

58. Having filed the above-referenced documents and because the Court is entitled to presume the authenticity of such documents filed in connection with the Verified Petitions under section 1516(b) of the Bankruptcy Code, the requirements of section 1515 of the Bankruptcy Code and Bankruptcy Rule 1007(a)(4) have been met, and these Chapter 15 Cases have been properly commenced.

## III. Alternatively, if the Court Does Not Recognize Some or All of the Spanish Proceedings as Foreign Main Proceedings, the Court Should Recognize those Spanish Proceedings as Foreign Non-Main Proceedings and Grant the Requested Relief.

59. Alternatively, should the Court decline to recognize the Spanish Proceedings as foreign main proceedings for any of the Debtors, the Foreign Representative respectfully requests that the Court recognize such proceedings as foreign non-main proceedings (as defined in section 1502(5) of the Bankruptcy Code) of any such Debtor, and grant the Requested Relief.

60. In connection with the recognition of the Spanish Proceedings, the Foreign Representative seeks certain Requested Relief, including enforcement of the Opening Orders (and any amendments made thereto in the future) in the United States, and application of sections 362 and 365(e) of the Bankruptcy Code. The Foreign Representative respectfully submits that such

relief is warranted under sections 105(a), 1507, and 1521 of the Bankruptcy Code and the general principles of comity that underpin chapter 15.

61. Upon recognition of a foreign proceeding, section 1521(a) authorizes the Court to grant "any appropriate relief" at the request of the recognized representative "where necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1521(a). Such relief may include:

a. staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations, or liabilities to the extent they have not been stayed under section 1520(a) of the Bankruptcy Code;

b. staying execution against the debtor's assets to the extent it has not been stayed under section 1520(a) of the Bankruptcy Code;

c. suspending the right to transfer, encumber, or otherwise dispose of any assets of the debtor to the extent this right has not been suspended under section 1520(a) of the Bankruptcy Code; and

d. granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a) of the Bankruptcy Code.

62. The Court may grant relief under section 1521(a) of the Bankruptcy Code if the interests of "the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a). Similarly, section 1507 of the Bankruptcy Code provides that, "if recognition is granted," a court "may provide additional assistance to a foreign representative under this title or under other laws of the United States." 11 U.S.C. § 1507. Finally, section 105(a) of the Bankruptcy Code provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

63. The Foreign Representative requests the Court exercise its broad discretion under sections 105, 1507, and 1521 to grant the Requested Relief insofar as such Requested Relief

exceeds that which is available by recognizing the Spanish Proceedings as "foreign main proceedings" and the Foreign Representative as a "foreign representative" as specified in the Bankruptcy Code. Granting such relief is consistent with the goals of international comity and assistance to foreign courts embodied in chapter 15 of the Bankruptcy Code and is necessary to effectuate the objective of the Spanish Proceeding.[59]

## NOTICE

64. The Foreign Representative will provide notice of the Verified Petitions consistent with Bankruptcy Rule 2002(q). The Foreign Representative proposes to notify creditors and parties in interest of the filing of the Verified Petitions in the form and manner set forth in the *Motion for Order Scheduling Recognition Hearing and Specifying Form and Manner of Service of Notice*, filed contemporaneously herewith. The Foreign Representative submits that, in view of the facts and circumstances, such notice is sufficient, and no other or further notice need be provided.

## NO PRIOR REQUEST

65. No prior request for the relief sought in the Verified Petitions has been made to this or any other court.

## CONCLUSION

66. The Foreign Representative respectfully submits that the Verified Petitions satisfy the requirements for the recognition of the Foreign Representative as the Debtors' "foreign representative" and the Spanish Proceedings as "foreign main proceedings." Accordingly, the Foreign Representative respectfully requests entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the Requested Relief.

---

[59] Olalde Decl. ¶¶ 38-40; Nieva Decl. ¶¶ 38-40.

Dated: July 29, 2026

Respectfully submitted,

*/s/ Jimmy D. Parrish*

Alexis C. Beachdell (*pro hac vice* pending)
Scott E. Prince (*pro hac vice* pending)
BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Telephone: 216.621.0200
Email: abeachdell@bakerlaw.com
sprince@bakerlaw.com

-and-

Camille C. Bent (*pro hac vice* pending)
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: 212.589.4200
Email: cbent@bakerlaw.com

-and-

Jimmy D. Parrish
Fed. ID No. 2687598
BAKER & HOSTETLER LLP
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, Florida 32801
Telephone: 407.649.4000
Email: jparrish@bakerlaw.com

*Counsel for PKF Attest Concursal, S.L.P., as Foreign Representative of Tubos Reunidos, S.A., Tubos Reunidos Group S.L.U., Tubos Reunidos Premium Threads, S.L.U., Aplicaciones Tubulares, S.L.U., Tubos Reunidos Services, S.L.U., Tubos Reunidos, GmBH, Tubos Reunidos America, Inc., and RDT, Inc.*

## **CERTIFICATE OF ACCURACY**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Local Rule 9013-1(i).

*/s/ Jimmy D. Parrish*
Jimmy D. Parrish

## **CERTIFICATE OF SERVICE**

I hereby certify that, on July 29, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Jimmy D. Parrish*
Jimmy D. Parrish

**VERIFICATION OF PETITIONS**

I, Iker Filloy Nieva, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America as follows:

I am a Partner and the Co-Director of the Restructuring and Insolvency Practice at PKF Attest Concursal, S.L.P., the court-appointed Insolvency Administrator and authorized Foreign Representative for Debtors Tubos Reunidos Group S.L.U., Tubos Reunidos Premium Threads, S.L.U., Aplicaciones Tubulares, S.L.U., Tubos Reunidos Services, S.L.U., Tubos Reunidos, GmBH, Tubos Reunidos America, Inc., and RDT, Inc. As such, I have full authority to verify the foregoing Verified Petitions on behalf of the Foreign Representative.

I have read the foregoing Verified Petitions, and I am informed and believe that the factual allegations contained therein are true and accurate to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: July 21, 2026

PKF Attest Concursal, S.L.P., solely in its capacity as court-appointed Insolvency Administrator and Foreign Representative of Tubos Reunidos Group S.L.U., Tubos Reunidos Premium Threads, S.L.U., Aplicaciones Tubulares, S.L.U., Tubos Reunidos Services, S.L.U., Tubos Reunidos, GmBH, Tubos Reunidos America, Inc., and RDT, Inc.

By: ______________________________
Iker Filloy Nieva

**VERIFICATION OF PETITIONS**

I, Itsaso Santos Olalde, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America as follows:

I am a Partner in the Restructuring and Insolvency Practice at PKF Attest Concursal, S.L.P., the court-appointed Insolvency Administrator and authorized Foreign Representative for Debtor Tubos Reunidos, S.A. As such, I have full authority to verify the foregoing Verified Petitions on behalf of the Foreign Representative.

I have read the foregoing Verified Petitions, and I am informed and believe that the factual allegations contained therein are true and accurate to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: July 21, 2026

PKF Attest Concursal, S.L.P., solely in its capacity as court-appointed Insolvency Administrator and Foreign Representative of Tubos Reunidos, S.A.

By: ______________________________
Itsaso Santos Olalde